UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH DURON,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>        Defendant. | Case No. 20-cv-05721-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 34 |

      The motion for summary judgment is granted in part and denied in part. This ruling assumes the reader is familiar with the evidence, the arguments made by the parties, and the applicable legal standard.

      UPS is entitled to summary judgment on Counts 2, 3, 9, and 11. These counts assert claims for failure to accommodate and failure to engage in the interactive process under the Fair Employment and Housing Act ("FEHA"), and for interference with rights under the Family Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA"). But the undisputed evidence shows that Duron was promptly granted each accommodation he requested, and that UPS diligently engaged in the interactive process with him, including by personally and immediately taking him to the doctor upon his request. These claims therefore fail as a matter of law.

      Duron's claim for punitive damages also fails as a matter of law. No reasonable jury could conclude that anyone at UPS engaged in conduct that rose to the level of fraud, oppression, or malice, especially on a clear-and-convincing standard. *See* Cal. Civ. Code § 3294.

      This leaves Duron's core claims for discrimination and retaliation under the FEHA,

FMLA, CFRA, and sections 98.6, 1102.5, and 6310 of the California Labor Code.[1] It also leaves Duron's derivative claims for failure to prevent discrimination and retaliation in violation of the FEHA and wrongful termination in violation of public policy. These claims—Counts 1, 4–8, 10, 12, and 13—squeak by on summary judgment. Although Duron's evidence is thin, it is enough to create a genuine dispute of material fact. Duron testified at his deposition that he approached HR with concerns regarding discrimination and retaliation on June 28, 2019, the day before he was suspended, and that HR declined to provide him with the whistleblower hotline phone number. *See Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (close timing between protected activity and an adverse action can support an inference of retaliation).

      The evidence also shows that UPS fired Duron chiefly for dishonesty and time theft, which are cardinal infractions under the Collective Bargaining Agreements, meaning UPS could fire Duron for a first offense. The undisputed evidence shows that dishonesty and time theft are intentional offenses. This makes them an awkward fit when applied to Duron's conduct on June 28. That day, Duron overcommunicated his every move via DIAD messages, making no secret of the fact that he was "waiting" for a reply instead of delivering packages. If Duron intended to be dishonest and steal time, it is highly unusual that he would be so forthcoming about it. A reasonable jury could therefore conclude that dishonesty and time theft were pretextual reasons for discharge, shoehorned to fit the facts of the case so that UPS could terminate Duron immediately, without having to implement any form of progressive discipline.

---

[1] UPS suggests that Duron has failed as a matter of law to show that he engaged in protected activities under these sections of the Labor Code. But Duron has put forth evidence that he "disclos[ed] information" to HR—"another employee who has the authority to investigate, discover, or correct the violation or noncompliance"—that UPS was violating the law by discriminating and retaliating against him. *See* Cal. Labor Code § 1102.5; *see also* Dkt. Nos. 35-2 at 35, 35-8, 35-12 at 4–5. And while UPS suggests that section 98.6 only covers complaints about unpaid wages, the plain language of section 98.6 incorporates section 1102.5. Lastly, UPS suggests that section 6310 only covers workplace health and safety complaints made directly to Cal-OSHA. But that provision states that complaints made to the "employer, or their representative" are protected. Duron has set forth evidence that on numerous occasions he orally complained to his supervisors about his safety concerns regarding curfew routes, and that he did so again via the ethics hotline on June 29. *See, e.g.*, Dkt. Nos. 35-2 at 20–21, 35-8, 35-12. Whether he engaged in a protected activity under section 6310 is therefore a triable issue of fact.

To be sure, the inference of pretext is undermined to a degree by the fact that "gross insubordination"—which captures Duron's conduct on June 28 at least a little better than intentional theft of time—is also a cardinal infraction. Based on that, a reasonable jury could conclude that time theft was not offered as a pretext to avoid progressive discipline, because UPS could just as easily have avoided it by firing Duron for gross insubordination instead. But this conclusion, while reasonable, is not compelled by the evidence. A reasonable jury could also conclude that UPS worried that Duron's behavior on June 28 did not amount to gross insubordination, and so it concocted reasons to fortify its decision to discharge Duron immediately.

Duron also adduced evidence of statements by his superiors from which a reasonable jury could infer discriminatory intent. Duron testified at his deposition that, on the day of the school lockdown that precipitated his PTSD, Chinn and Green teased him with comments like, "what do you expect from this area?" and "it must not have been that dangerous if you were inside." The interview notes of Laura Arrayga, who conducted the HR investigation into Duron's complaints, reflect that Chris Moore, another UPS driver, told Arrayga that Chinn and Green were upset because Duron was claiming a "mental injury."[2] According to Duron's testimony, Chinn and Green also questioned the legitimacy of a doctor's note that Duron presented to explain his absence from work, stating that it "did not look real" to them. UPS argues that these comments cannot support a finding of retaliation or discriminatory intent because Chinn and Green were not involved in the decision to terminate Duron. But this argument is contradicted by Crouch's deposition testimony that Chinn, Green, Flynn, and Crouch "collectively" made that decision. Dkt. No. 35-3 at 11.

Based on this evidence, a reasonable jury could conclude that Duron's supervisors did not

---

[2] UPS protests that Arrayga's notes present a double hearsay problem. But Duron does not need to present evidence in admissible form at the summary judgment stage, so long as he can demonstrate that he could introduce the evidence in admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2); *Dillon v. Continental Casualty Company*, 278 F. Supp. 3d 1132, 1137 (N.D. Cal. 2017). Here, Duron can potentially avoid any hearsay problems by calling Moore to the stand.

take his "mental injury" seriously and developed discriminatory animus towards him after the school lockdown incident. A reasonable jury could further conclude that, while Duron's supervisors granted his requested leave and accommodation to avoid running afoul of the law, they later retaliated by jumping at the first opportunity to get rid of him. Summary judgment is therefore inappropriate on these claims.

UPS also argues that Duron's claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"). But the pleaded claims do not put at issue any rights created by the Collective Bargaining Agreements; they put at issue rights created by federal statutes. *See Curtis v. Irwin Industries, Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019). Nor is resolving the discrimination and retaliation claims "substantially dependent upon interpretation" of those Agreements. *Id.* A scant few subsections of those Agreements will no doubt form part of the evidence presented at trial. But the key questions in the case—*e.g.*, whether Duron engaged in protected activities covered by each statute, whether his supervisors developed discriminatory animus towards him due to his "mental injury" and related accommodations, and whether his discharge was driven by such animus—do not depend, substantially or otherwise, on interpretation of the Agreements.

**IT IS SO ORDERED.**

Dated: November 29, 2022

_____
VINCE CHHABRIA
United States District Judge